UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA ELIZABETH BLOSE, | Case No. 1:22-cv-01651-CDB (SS) |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | (Doc. 18) |

Plaintiff Patricia Elizabeth Blose ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Docs. 11, 17; hereinafter, "AR") and the parties' briefs (Docs. 18, 19), which were submitted without oral argument. Upon review of the record, the Court finds and rules as follows.[1]

**I.   BACKGROUND**

   **A.   Administrative Proceedings and ALJ's Decision**

On April 20, 2020, Plaintiff filed an application under Title II and Title XVIII of the Act for benefits with an alleged onset date of February 21, 2019. (AR 242). Plaintiff's claim was

---

[1] On February 8, 2023, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to a U.S. Magistrate Judge. (Doc. 10).

initially denied on June 30, 2020, and again upon reconsideration on October 7, 2020.  (AR 123, 130).  Plaintiff requested a hearing before an Administrative Law Judge on October 26, 2020.  (AR 137).

Ben Willner, the Administrative Law Judge ("ALJ"), held a hearing on April 8, 2021, wherein Plaintiff, counsel for Plaintiff Todd Greenwald, and impartial vocational expert ("VE") Michael DeMark, all testified.  (AR 1066).  ALJ Willner retired prior to the issuance of a decision and ALJ MaryKay Rauenzahn took over the case, holding a hearing on September 22, 2021, with Plaintiff, counsel Todd Greenwald, and VE Gretchen Bakkenson attending.  (AR 41-43).

The ALJ issued an unfavorable decision on November 3, 2021, finding Plaintiff was not disabled.  (AR 30).  The Appeals Council denied Plaintiff's request for review on November 3, 2022, rendering the ALJ's decision as the final decision of the Commissioner.  (AR 1).  Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision.  (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. § 404.1520(a).  (AR 18).  The ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2021.  (AR 19).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 21, 2019, the alleged onset date.  (AR 20).

At step two, the ALJ found that Plaintiff had the following medically determinable impairments ("MDIs") through the date last insured which significantly limit the ability to perform basic work activities: irritable bowel syndrome ("IBS")/chronic functional abdominal pain syndrome, recurrent right ankle sprains with talofibular ligament and calcaneofibular ligament tears, status post-surgical repair, obesity, fibromyalgia, lumbar spondylosis, thyroid disorder, and bilateral elbow medial epicondylitis.  *Id.*  The ALJ considered the severity of Plaintiff's mental impairments, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[2]  The ALJ found no limitations in the four broad areas of

---

[2] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the

functioning.  Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, and do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, the ALJ found the paragraph B criteria were not satisfied and that the mental impairments are non-severe.  (AR 21).

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  (AR 22).

Prior to step four, the ALJ found that Plaintiff has the RFC to perform a reduced range of light work as defined in 20 C.F.R. 404.1567(b) meaning that:

> The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for approximately six hours and sit for approximately six hours, in an eight-hour workday, with normal breaks.  The claimant cannot climb ladders, ropes, and scaffolds and can occasionally climb stairs and ramps. The claimant can occasionally stoop, crouch, kneel, crawl, and balance, as defined by the Selective Characteristics of Occupations of the Dictionary of Occupational Titles (SCO-DOT).  She can occasionally push and pull with the right lower extremity. The claimant should have no exposure to moving mechanical parts and high, exposed place hazards, as rated by the Selective Characteristics of Occupations of the Dictionary of Occupational Titles (SCO-DOT).

(AR 23).

In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted the two-step process as set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, and 20 C.F.R. § 404.1520c. *Id.*  The ALJ found "[a]fter careful consideration of the evidence" that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the longitudinal treatment record.  (AR 25).  The ALJ, citing to Plaintiff's hearing testimony, treatment

---

four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id*.  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. *Id.*

notes, prior administrative medical findings, and activities of daily living, determined that the evidence of record did not provide support for the existence of greater limitations above those assessed in the RFC regarding Plaintiff's impairments.  (AR 25-29).

At step four, the ALJ determined that Plaintiff has past relevant work, under 20 C.F.R. § 404.1565, that she could perform as a customer service clerk and work order sorting clerk.  (AR 29).  The ALJ therefore concluded a finding of "not disabled" was appropriate under sections 216(i) and 223(d) of the Act from February 21, 2019, through the date of the decision.  (AR 30).

### B.    Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II.    LEGAL STANDARD

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205, 42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account

of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**III.    ISSUES AND ANALYSIS**

Plaintiff seeks judicial review of the Commissioner's final decision denying her application. Plaintiff asserts that the ALJ failed to offer any clear and convincing reasons for rejecting Plaintiff's subjective complaints. (Doc. 18 at 7-18).

///

### 1.    *Parties' Contentions*

Plaintiff asserts that the ALJ's failure to "connect any specific portion of Blose's testimony to the parts of the record supporting the ALJ's decision prevents the Court from determining whether the ALJ's decision was supported by substantial evidence." (Doc. 18 at 11; citation omitted). Plaintiff argues that the ALJ's "articulated rationale is simply to state a few times in the decision that [] 'her level of functioning is not as limiting as alleged and that the objective medical findings are not fully consistent with the degree of impairment alleged by the claimant'" and that Plaintiff's subjective complaints beyond those included in the RFC are "not consistent with the longitudinal objective medical evidence." *Id.* at 13. Plaintiff contends that, as the ALJ found fibromyalgia to be a severe impairment, the ALJ's rejection of Plaintiff's testimony based on a lack of consistency with the objective evidence is legal error. *Id.* at 13-14.

Plaintiff further argues that, as the ALJ "did not articulate Blose's sporadic daily activities as reason to reject the testimony," any such argument raised by Defendant may not be considered by the Court. Even if the ALJ had articulated such reasons, Plaintiff provides that nothing in her description of her limitations "indicate she is capable of maintaining substantial gainful work activity" for eight hours each day and five days a week. *Id.* at 14-16 (citing AR 51-63).

Plaintiff also asserts that the ALJ mischaracterized the record in stating that Plaintiff did not report to her treating providers her need to lie down three to four times per week for between two and four hours per episode. *Id.* at 16-17 (citing AR 27). Plaintiff contends that, in fact, the record supports that she did report this need and the ALJ's finding to the contrary constitutes error. *Id.* at 17 (citing AR 372, 374, 468, 490). Plaintiff separately argues that the ALJ errored in noting that Plaintiff has responded to treatment and thereby suggesting some improvement. *Id.* at 17.

Defendant asserts that the ALJ appropriately evaluated Plaintiff's subjective complaints and "relied upon several specific factors" to discount Plaintiff's testimony, such as objective evidence, inconsistent statements, and evidence of improvement, and "appropriately linked" said evidence to her findings without need of inferential leaps. (Doc. 19 at 6). In support, Defendant refers to findings in the ALJ's decision, namely that the record showed complaints of intermittent or occasional diarrhea without related weight loss, Plaintiff's medications remained largely consistent

in dosage with discontinuation of a narcotic pain medication in 2019, and Plaintiff's descriptions of her symptoms to treating providers was inconsistent with the allegations she set forth at the hearing. *Id.* at 8.

Defendant argues that records possibly evidencing Plaintiff's need to lie down described a temporary period of pain, rather than a need to lie down on a regular basis, as well as a period of time already adjudicated in a prior decision. *Id.* at 9 (citing AR 27, 60, 73-87, 468, 490). Defendant contends that the ALJ "acknowledged Plaintiff's testimony of uncontrolled symptoms … while also summarizing her reported [daily] activities" and doing so was permissible, namely in drawing a "comparison between Plaintiff's reported activities and her allegations of constant debilitating symptoms." *Id.* (citing AR 24-25, 52, 54, 58-59, 1074-75).

Defendant asserts that the ALJ "identified numerous specific factors to find Plaintiff less limited than alleged" and that Plaintiff's "over-arching argument is that the ALJ did nothing more than summarize the medical evidence," without linking such evidence to the ALJ's discounting of Plaintiff's subjective symptom testimony. Defendant notes that the ALJ relied upon reports of improvement with conservative treatment, inconsistent statements, and daily activities, and the rationale in the decision was sufficiently clear for judicial review. *Id.* at 10-11.

Lastly, Defendant asserts that, regarding fibromyalgia, Plaintiff asserted the "only conditions keeping her from returning to work were here gastrointestinal issues, which the ALJ noted" and, as with all impairments, the ALJ must compare the consistency of Plaintiff's alleged symptoms of fibromyalgia with other evidence in the record. *Id.* at 11-12 (emphasis omitted; citing AR 24, 58, 1077-78).

### 2.   Governing Authority

The ALJ is responsible for determining credibility,[3] resolving conflicts in medical

---

[3] SSR 16-3p, which applies to disability applications heard by the agency on or after March 28, 2016, eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation "is not an examination of an individual's character," but an endeavor to determine how "symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3. Nevertheless, the Ninth Circuit continues to reference an ALJ's "credibility assessment" when reviewing claims that an ALJ impermissibly discounted a claimant's testimony. *See*, *e.g.*, *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020).

testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A plaintiff's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674 F.3d 1104, 1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Determining whether a plaintiff's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. *Id.* at 1112. The ALJ must first determine if "the [plaintiff] has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the plaintiff to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the first step is met and there is no evidence of malingering, "the ALJ must provide 'specific, clear and convincing reasons for' rejecting the [plaintiff's] testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281); *see Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse credibility finding must be based on "clear and convincing reasons"). The ALJ must make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the plaintiff's testimony on permissible grounds and did not arbitrarily discredit the plaintiff's testimony. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the [plaintiff's] testimony, nor do they require ALJs to draft dissertations when denying benefits." *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22, 2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v.*

*Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court will still defer to the ALJ's decision.") (quoting *Wilson v. Berryhill*, 757 Fed. App'x 595, 597 (9th Cir. 2019)).  "The standard isn't whether our court is convinced, but instead, whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (noting that the clear and convincing standard requires an ALJ to show his work).

The ALJ may consider numerous factors in weighing a plaintiff's credibility, including "(1) ordinary techniques of credibility evaluation, such as the [plaintiff's] reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the [plaintiff] that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the [plaintiff's] daily activities." *Smolen*, 80 F.3d at 1284.  In evaluating the credibility of symptom testimony, the ALJ must also consider the factors identified in SSR 16-3P.  *Id*. (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)); accord *Bray v. Comm'r Soc. Sec.*, 554 F.3d 1219, 1227 (9th Cir. 2009). These factors include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g*., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2017 WL 5180304, at *7; *see* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding requirement in Social Security cases.'" *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).  "A finding that a [plaintiff's] testimony is not credible must be sufficiently specific to allow a

reviewing court to conclude the adjudicator rejected the [plaintiff's] testimony on permissible grounds and did not arbitrarily discredit a [plaintiff's] testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

"The fact that a [plaintiff's] testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001); *see* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability solely because the objective medical evidence does not substantiate your statements."). Rather, where a plaintiff's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide additional reasons for discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must specify what testimony is not credible and identify the evidence that undermines the [plaintiff's] complaints – '[g]eneral findings are insufficient.'" *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

However, the medical evidence "is still a relevant factor in determining the severity of the [plaintiff's] pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records and concluded that contradictions with the medical records, by themselves, are enough to meet the clear and convincing standard. *Hairston v. Saul*, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting *Carmickle*, 533 F.3d at 1161).

### 3.    *Analysis*

The ALJ summarized Plaintiff's subjective symptom testimony from the hearing. (AR 24). After finding that Plaintiff's impairments could reasonably be expected to cause some of her alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the longitudinal treatment record. (AR 25); *see Treichler*, 775 F.3d at 1103 (noting that ALJs "routinely include this [boilerplate] statement in their written findings as an introduction ... before [identifying] what parts of the claimant's testimony were not credible and why").

11

During the hearing before the prior assigned ALJ Willner, counsel for Plaintiff asked Plaintiff whether, "Separate from IBS, separate from the abdominal pain syndrome, do you have any other problems that would limit you from returning to work separate from that?" Plaintiff responded in the negative. Counsel then asked, "So, the complaints you have with your ankle, your knee, elbow and so on, those are like under control or at least managed at this time?" Plaintiff responded in the affirmative. Counsel also asked Plaintiff, "So, weight-bearing knee issues, ankle issues, is the knee, ankle or the elbow in your opinion restricting your return to work at this time or is it just exclusively the IBS?" Plaintiff responded, "It's the stomach pain and IBS." (AR 1078). Plaintiff did not include fibromyalgia as an additional reason for limitations on her ability to return to work.

Plaintiff testified during that hearing that her IBS and abdominal pain symptoms had worsened between the date of the hearing a year prior, stating that the "pain is less responsive to the meds that [she] takes" and that the pain "never goes away." (AR 1079-80). She testified the abdominal pain rates between a two or a three, on a scale from zero to ten where ten represents the most severe pain that may result in having to go to the emergency room, and that it can go as high as a six or a seven, with possible daily fluctuations in intensity. (AR 1081). She also testified that the abdominal pain arouses her from her sleep (AR 1082) and that her stamina is low, resulting in her needing to sit down while doing daily tasks like cooking or vacuuming. (AR 1083).

Regarding bathroom usage, she attested that if she has diarrhea or constipation, she may use the bathroom from five to 25 times or more in a day, and for as much as 15 minutes, with three to four instances of diarrhea a week. She explained that her patten regarding usage of the bathroom has worsened over the years since her prior hearing, namely in an increased number of visits per week. (AR 1084-85). The longest time in aggregate she could be on her feet in any given day is 20 to 30 minutes, with the rest of her time spent sitting or lying down, and with two to four hours of napping on three to five days a week, depending on pain. According to Plaintiff's testimony, this pattern has been ongoing for two or more years. (AR 1086).

During the hearing before the present assigned ALJ Rauenzahn, whose decision is before the Court on appeal, Plaintiff's attorney asked Plaintiff whether her condition had changed from

the time of the prior hearing.  Plaintiff stated that the pain in her stomach had gotten worse, in regards to intensity, frequency, and duration, and that it "never goes away," and that it "can be as low as a two but it goes as high as an eight." (AR 56-57).  Plaintiff stated that "there's been an increase in [t]ramadol" regarding her use of medication to control the pain, and there are no days in which she can forgo pain medication. (AR 57). Plaintiff reiterated that, apart from her abdominal and gastric complaints, no other condition would limit her return to work.  (AR 58).  Plaintiff provided that she laid down three to four times a week, anywhere from two to four hours at a time, to alleviate some of the pain.  (AR 60-61).

Plaintiff does not advance any arguments regarding the ALJ's findings as to knee, ankle, or elbow issues, or any other findings regarding symptom testimony in the decision, aside from those relating to IBS, abdominal pain, and fibromyalgia.  *See* (Doc. 18).

i.      *Preliminary Issues*

First, as Plaintiff indicated at the hearing that her other impairments, aside from IBS and abdominal pain, were not relevant as to limitations preventing her return to work, and Plaintiff fails to advance any arguments in support, the Court will not address the ALJ's finding as to these other impairments.

Second, Plaintiff is correct that the ALJ did not analyze Plaintiff's daily activities specifically when rejecting her symptom testimony of record regarding worsened abdominal pain, diarrhea, constipation, and her regular need to lie down.  (Doc. 18 at 14); *see* (AR 24-27).  Thus, the Court will not reach any such argument by Defendant.  (Doc. 19 at 9-10).

Third, as noted above, Plaintiff represented during the hearing that, apart from her abdominal and gastric complaints, no other condition would limit her return to work.  (AR 58). Plaintiff did not mention fibromyalgia during the hearing.  Though Plaintiff now mentions in her motion fibromyalgia, she advances no argument besides the following conclusory sentence: "The ALJ's rejection of Blose's testimony based on a lack of consistency with the objective evidence is itself legal error in light of the severe fibromyalgia found by the ALJ." (Doc. 18 at 14).  As Plaintiff mentioned symptom testimony regarding fibromyalgia neither in the hearing before the previous ALJ nor before the present ALJ, and indeed expressly disavowed limitations aside from those

13

related to abdominal and gastric complaints, the Court will not reach Plaintiff's claim as raised in her motion regarding fibromyalgia, particularly as Plaintiff fails to advance any arguments in support.

*ii.*     *The ALJ's Connection of the Analysis to the Relevant Testimony*

Plaintiff asserts that the ALJ's failure to "connect any specific portion of Blose's testimony to the parts of the record supporting the ALJ's decision prevents the Court from determining whether the ALJ's decision was supported by substantial evidence." (Doc. 18 at 11; citation omitted). Plaintiff argues that "[a]t no point" did the ALJ identify the specific testimony that is undermined by Plaintiff's treatment history and that failure is legal error. *Id.* at 12.

As to these points, Plaintiff is incorrect. The ALJ does, in fact, connect Plaintiff's testimony to the analysis in the decision, in a manner sufficient for the Court to review whether the ALJ's decision was properly supported. As noted above, the ALJ is not required to "perform a line-by-line exegesis of the [plaintiff's] testimony," nor must the ALJ "draft dissertations when denying benefits." *Stewart*, 2023 WL 4162767, at *5. If the ALJ's "path may reasonable be discerned," the Court must still defer to the ALJ's decision. *Record*, 2023 WL 2752097, at *4.

For example, the ALJ begins a portion of her analysis with the introductory statement, "while the claimant alleges worsening abdominal pain," followed by a finding that "the longitudinal evidence suggests some improvement with Lyrica and improvement with relatively low-dose [t]ramadol." (AR 25). It is clear from the language of the ALJ's decision on this point that she is addressing the Plaintiff's testimony regarding her worsening abdominal pain, before setting forth the basis for her finding to discount said testimony.

Similarly, the ALJ begins another portion of her analysis with the introductory statement, "[r]regarding irritable bowl syndrome (IBS)/chronic functional abdominal pain," followed by a finding that the "treatment record indicates some diarrhea complaints and alternating constipation and diarrhea, but significantly worse diarrhea was reported during the claimant's consultative examination performed in connection with her application for employer-provided disability insurance benefits." (AR 25). Again, here, it is clear from the language of the decision that the ALJ is addressing the Plaintiff's testimony regarding her diarrhea and constipation, particularly as

14

it relates, in context, to her need to use the bathroom.

The ALJ identifies the testimony to which she refers at the outset of each paragraph detailing her analysis thereto.  As further examples, she states that "the claimant testified that she had an increase in her medications, specifically tramadol, since the last administrative law judge decision was issued," prior to discussing this portion of the testimony.  (AR 26-27).  And the ALJ states that "the claimant testified that she must lie down for three to four times per week for between two and four hours per episode," prior to discussing this portion of the testimony.  (AR 27).

The ALJ's analysis is connected to relevant portions of Plaintiff's symptom testimony, sufficient to allow the Court to discern the evidence upon which the ALJ relied to reject specific portions of said testimony.  *See. e.g., Sevilla v. Kijakazi*, No. CV 21-00331 JAO-WRP, 2022 WL 1302883, at *7 (D. Haw. May 2, 2022) ("While the ALJ's Decision does not include a sentence such as, 'I reject Plaintiff's testimony that he has difficulty leaving the house many days, because X, Y, and Z reasons,' an ALJ need not perform a line-by-line exegesis of the claimant's testimony.  And the Court will not fault the agency merely for explaining its decision with less than ideal clarity" so long as it is "sufficient to allow[ ] for meaningful review.") (citations and quotations omitted; alterations in original).

### iii.    *The ALJ's Evaluation of Plaintiff's Symptom Testimony*

Plaintiff asserts that the ALJ mischaracterized the record in stating that Plaintiff did not report to her treating providers her need to lie down three to four times per week for between two and four hours per episode and that the record supports that Plaintiff did report this need.  (Doc. 18 at 16-17; citing AR 372, 374, 468, 490).  Plaintiff also argues that the ALJ is incorrect in noting that Plaintiff has responded to treatment and thereby suggesting some improvement, and that the ALJ did not articulate daily activities as a rationale to reject her testimony and, even if the ALJ had, it would have been insufficient.  Plaintiff concludes that "[i]t is clear the ALJ's sole rationale, that the objective medical evidence did not support the testimony, is in and of itself [] insufficient to reject the testimony."  (Doc. 18 at 17-18).

If the ALJ solely relied on objective medical evidence to reject the relevant symptom testimony, such an analysis would not meet the relevant clear and convincing standard.  *See*

*Vertigan*, 260 F.3d at 1049; 20 C.F.R. § 404.1529(c)(2).  However, the ALJ's citation to said records does not, by itself, suggest the ALJ relied only on objective medical evidence in discounting Plaintiff's credibility.  The medical evidence "is still a relevant factor in determining the severity of the [plaintiff's] pain and its disabling effects" (*Rollins*, 261 F.3d at 857) and an ALJ properly may discount a plaintiff's symptomology testimony if she finds it is contradicted (not merely unsupported) by identified medical records.  *Hairston*, 827 Fed. App'x at 773.

a.   Symptom Testimony Regarding Abdominal Pain, Diarrhea, and Constipation

Here, the ALJ cites to medical records for the proposition that "the record reveals no complaints of significantly worsening pain to pain management or other providers, instead reporting that her pain is improved or about the same."  The ALJ states that the "most recent noted increase in subjective pain complaints occurred in January 2019 and April 2019" but that, "by February 2019, the claimant was noted to be clinically stable and doing fairly well and the claimant reported only a 'dull' ache in September 2019."  (AR 25; citing Exs. 3F, 21F, B2F-B5F, B10F-B12F, B19F-B21F).  The ALJ notes that Plaintiff's statements to her physicians and to the Social Security Administration "vary from her testimony at the hearing."  The ALJ states that though Plaintiff "testified that her abdominal pain has worsened since the last [ALJ] decision was issued with increased diarrhea episodes lasting … three to four times per week with five to 25 episodes each day," the record showed that Plaintiff had "not complained of significant and frequent diarrhea episodes to her treating providers."  (AR 26).  In support, the ALJ cites to medical records: AR 692 and 699 (for the finding that Plaintiff reported to her treatment provider "no episodes of diarrhea, constipation, or abdominal pain"); AR 798 and 814 (for the finding that Plaintiff reported to her treatment provider "no episodes of diarrhea, constipation, or abdominal pain"); and AR 1012-13 (for the finding that Plaintiff reported to her treatment provider "only 'occasional' diarrhea episodes and … a 'dull ache' in the abdomen.").

On September 12, 2019, physician Emeran A. Mayer records an appointment regarding Plaintiff's abdominal pain.  Dr. Mayer states that Plaintiff was initially seen in 2016 for symptoms of chronic abdominal pain and is "presenting with the same symptoms for treatment recommendations."  In describing the history of Plaintiff's illness, Dr. Mayer notes that "HPI is

16

summarized in my previous H&P from 4/11/2016," before providing that Plaintiff "had longstanding IBS symptoms … she describes her pain intensity fluctuating between 2-8/10 most commonly 4-6/10," and her "current symptoms are a dull ache over the abdomen … Symptoms are distinctly different from her previous IBS symptoms of crampy, lower abdominal pain."  (AR 1012).  Later in the record, Dr. Mayer notes that Plaintiff has "occasional diarrhea and urgency," "5 year history of chronic functional abdominal pain syndrome with some improvement on Lyrica," and that there "has been no change in my initial diagnosis of chronic abdominal pain syndrome …" (AR 1013-14).[4]

This record does not fully support the ALJ's conclusions.  Although Plaintiff reports a "dull ache" over the abdomen as her "current symptoms," and notes only "occasional diarrhea," such a report is not entirely consistent with her testimony of three to four instances of diarrhea with five to 25 visits to the bathroom.  The record presents some ambiguity regarding overall conclusions as to Plaintiff's pain because it records only Plaintiff's "current symptoms" and provides that her pain intensity fluctuates in a manner similar to that described in her testimony.

On August 27, 2020, physician Hope Wildenberg records a follow-up appointment regarding Plaintiff's hypertension.  Under the category "gastrointestinal," Dr. Wildenberg states "[n]egative for abdominal pain, heartburn, constipation, diarrhea, and stool changes."  (AR 692).  On September 10, 2020, Dr. Wildenberg records another visit by Plaintiff, presenting with hearing loss on her left side.  Under the category "gastrointestinal," Dr. Wildenberg states "[n]egative for abdominal pain, heartburn, constipation, diarrhea, and stool changes."  (AR 699).

On July 30, 2021, Dr. Wildenberg records a six-month follow-up visit.  Under the category "gastrointestinal," Dr. Wildenberg states "[n]egative for abdominal pain; [n]egative for diarrhea; [n]egative for constipation; [n]egative for nausea; [n]egative for vomiting."  (AR 814).  On August 23, 2021, Dr. Wildenberg records an annual physical.  Under the category "gastrointestinal," Dr. Wildenberg states "[n]egative for abdominal pain; [n]egative for diarrhea; [n]egative for constipation; [n]egative for nausea; [n]egative for vomiting."  (AR 798).

Plaintiff is recorded as negative for abdominal pain, diarrhea, and constipation in four visits

---

[4] The ALJ also cites the same record at AR 474.  *See* (AR 25; citing "3F/39").

17

from 2020 to 2021. These appointments are recent in time to the hearing and decision, with the hearing before the present ALJ taking place on September 22, 2021, and the decision issued November 3, 2021. (AR 30, 43). Thus, the appointments on July 30 and August 23, 2021, predate the decision by approximately three months and two months, respectively. Additionally, the appointment on August 23, 2021, is described as an annual physical and, presumably, is intended to explore the Plaintiff's general health at that time. In total, the records cited by the ALJ support the conclusion that Plaintiff's reports to physicians during her appointments contradicted her testimony during the hearing regarding worsened abdominal pain, diarrhea and constipation.

In addition, during the hearing before the present ALJ, Plaintiff stated that "there's been an increase in [t]ramadol" regarding her use of medication to control the pain. (AR 57). In rejecting this testimony, the ALJ stated that Plaintiff "did not receive a prescription for 50 milligrams of tramadol until February 2020." The ALJ provides that this prescription was on an as-needed basis every six hours. The ALJ states that, otherwise, her tramadol prescription remained at the same dose and on an "as-needed" frequency basis throughout the period under review, "suggesting that this dose is adequate in controlling the claimant's subjective pain." (AR 26-27; citing AR 415, 561, 958).

In support, the ALJ cited to the medical record: AR 445 and 471 (for the finding that "in a single isolated instance, the claimant reported to her treating physician in March 2020 that she cannot tolerate tramadol and received a prescription for a heavier narcotic, Norco, on an as-needed basis, despite reporting in November 2019 that Norco is not effective for her pain"); and AR (497 for the finding that "the claimant was prescribed Norco during the period addressed by the prior administrative law judge, which does not support the claimant's assertion that her pain medications increased during the current period under review," concluding that "the record better supports that the claimant stopped taking a heavier narcotic, Norco, and was switched to a less heavy narcotic, [t]ramadol, and Lyrica during the current period under review."). (AR 27).

The documents annexed at AR 415 include a record by Dr. Wildenberg on October 2, 2019, of a Lyrica prescription at a dosage of 200 milligrams. AR 561 includes a record by physician Sophie X. Deng on February 10, 2020, of a tramadol prescription at a dosage of 50 milligrams,

18

every six hours as needed.  AR 958 includes a record by physician Thomas Nasser on September 14, 2021, of a tramadol prescription at a dosage of 50 milligrams and a Lyrica prescription at a dosage of 200 milligrams.  AR 445 is a handwritten record with poor legibility and is difficult to fully parse, rendering it ambiguous.  However, AR 497 evidences a recording by Dr. Nasser of a Norco prescription on June 26, 2018, predating the current period of review.  AR 471 includes the notation by Dr. Nasser on November 18, 2019, that Norco was discontinued due to being ineffective.

In her motion, Plaintiff does not set forth any citations to the record regarding worsened abdominal pain, diarrhea, or constipation, nor does Plaintiff offer any specific arguments challenging the ALJ's cited evidence in support.  *See* (Doc. 18).

In citing to medical evidence contradicting Plaintiff's statements, the ALJ supported the rejection of Plaintiff's symptom testimony regarding worsened abdominal pain, diarrhea, and constipation with clear and convincing evidence.  *See Hairston*, 827 Fed. App'x at 773.

b. Symptom Testimony Regarding Need to Lie Down

"An ALJ may consider a range of factors in assessing credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

As noted above, the ALJ rejected Plaintiff's symptom testimony because it was inconsistent with the medical evidence and Plaintiff's "statements to her physicians and to the Social Security Administration (SSA) vary from her testimony at hearing."  (AR 26).  The ALJ cited to clear and convincing evidence to conclude that Plaintiff's claims were not credible.

During the hearing before the prior ALJ, Plaintiff stated that the longest time in aggregate she could be on her feet in any given day is 20 to 30 minutes, with the rest of her time spent sitting or lying down, and with two to four hours of napping on three to five days a week, depending on pain.  She stated this pattern has been ongoing for two or more years.  (AR 1086).  During the

hearing before the present ALJ, Plaintiff provided that she laid down three to four times a week, anywhere from two to four hours at a time, to alleviate some of the pain.  (AR 60-61).

In rejecting this testimony, the ALJ offered the following reasoning:

> Additionally, although the claimant testified that she must lie down three to four times per week for between two and four hours per episode, the longitudinal record reveals that the claimant failed to report this significantly limiting symptom to any of her treating providers throughout the period under review. Exs. (September 2021 Hearing Testimony); *c.f. e.g.* B2F through B21F; *but see* Ex. B1F (noting that the claimant endorsed needing to lie down when undergoing an independent medical examination in connection with her application for employer-provided disability benefits).

(AR 27).

Plaintiff cites to the medical record for the proposition that the ALJ is wrong and Plaintiff did, in fact, report her need to lie down to relieve pain to her treatment providers.  (Doc. 18 at 17; citing AR 372, 374, 468, 490).

The ALJ referred to two of the records identified by Plaintiff (AR 372 and 374) in the reasoning noted above; said records are part of Exhibit B1F, which documents an independent medical examination of Plaintiff for purposes of assessing disability.  *See* (AR 363).  It is clear from the citation signals used by the ALJ that the ALJ is contrasting Plaintiff's report of her need to lie down during an independent medical examination intended to evaluate her disability, with the lack of any such report to treatment providers outside of a disability-evaluation context.  *See, e.g., Jodie W. v. Comm'r of Soc. Sec.*, No. C20-5117-MLP, 2021 WL 1192471, at *3 (W.D. Wash. Mar. 30, 2021) ("Plaintiff misses the ALJ's point: the ALJ noted that Plaintiff reported symptoms during evaluations related to benefits eligibility that she did not report elsewhere … Regardless of whether Plaintiff's exaggeration of symptoms to DSHS examiners unequivocally demonstrates a secondary gain motivation, this type of inconsistency is itself a convincing reason to discount a claimant's testimony.") (citing *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006)).

However, the ALJ's statement that "the claimant failed to report this significantly limiting symptom to any of her treating providers throughout the period under review" is not entirely supported by the record.  The medical records at AR 468 and 490 identified Plaintiff's indication

20

of lying down, at least one of those records falls within the period under review, and both records are part of a continuous set of treatment records beginning prior to, and continuing into, the period under review.

During an appointment for chronic abdominal pain on March 8, 2018, nurse practitioner Maria Davis of Avors Medical Group recorded that Plaintiff "still requires frequent periods of lying down throughout the day to relieve pain despite medication …" (AR 490). During additional appointments on December 11, 2018, on January 15, 2019, on June 7, 2019, on August 13, 2019, and on September 23, 2019, Dr. Nasser, also of Avors Medical Group, recorded either that pain is aggravated by walking, standing, bending, and sitting for prolonged periods, or that pain is alleviated with rest. (AR 505, 510, 515, 520, 526, 532).

On November 18, 2019, for a follow-up visit regarding abdominal and lumbar pain, Dr. Nasser records that Plaintiff reported her "pain has remained since last visit. Patient reports for the past she has noted not be feeling very well [sic] and has been having to lay down ever day for the past two weeks." (AR 468). On February 24, 2020, medical records document Plaintiff's follow-up visit for abdominal and lumbar pain with Dr. Nasser. Though lying down and resting are not mentioned, this record appears to be otherwise substantially similar to the aforementioned records and continuing the same line of treatment. (AR 439). During a visit on June 1, 2020, Dr. Nasser records that Plaintiff "reports of stomach pain flare ups, causing her to become bed rest [sic]." (AR 992). A later record from September 14, 2021, includes Dr. Nasser's recording that Plaintiff's symptoms included abdominal pain and under the subcategory "Context" recorded prolonged walking, standing, sitting, physical activity, and twisting, as well as sitting to standing motions. (AR 957).

The period under review began on February 21, 2019. (AR 16). The records noted above began prior to that date and continued the same line of treatment into the period of review, with mention of a need to lie down on at least three occasions within the records overall (two within the review period), and with numerous mentions of resting alleviating abdominal pain. The ALJ does not discuss these records within the decision. *See, e.g., Henderson v. Comm'r, Soc. Sec. Admin.*, No. 6:17-CV-00481-HZ, 2018 WL 2102401, at *9 (D. Or. May 4, 2018) ("Thus, while the date of

the opinion may be one factor the ALJ can consider in giving an opinion more or less weight, a medical opinion is not insignificant or not probative merely because it is rendered prior to an alleged onset date, particularly in cases where the claimant suffers from an ongoing impairment.") (citing *Carmickle*, 533 F.3d at 1165, & *Williams v. Astrue*, 493 F. App'x 866, 868-69 (9th Cir. 2012)).

Thus, the ALJ erred in finding "the claimant failed to report this significantly limiting symptom to any of her treating providers throughout the period under review." (AR 27).

### iv.    *The ALJ's Harmless Error*

An ALJ's error may be harmless where she provides valid reasons for disbelieving a plaintiff's testimony in addition to invalid reasons. *Molina*, 674 F.3d 1115 (citing cases). The Ninth Circuit has articulated two different standards governing application of harmless error. *See Carmickle*, 533 F.3d at 1162-63. Where an ALJ "errs in not providing any reasons supporting a particular determination … the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred. Otherwise, where the ALJ provides analysis but some part of that analysis is flawed (*i.e.*, some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), … any error is harmless if it is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid." *Silvestre v. Comm'r of Soc. Sec.*, No. 2:17-CV-0539-CMK, 2018 WL 4096092, at *4 (E.D. Cal. Aug. 28, 2018) (citing *Carmickle*, 533 F.3d at 1162-63).

Here, as noted in subsection (a), the ALJ began by providing analysis that Plaintiff's IBS-related symptom testimony was contrary to the medical evidence and her statements to her physicians. The ALJ continues this line of analysis when discussing all of Plaintiff's IBS-related symptom testimony and supported those findings with clear and convincing evidence. The ALJ then began her analysis on Plaintiff's symptom testimony regarding the need to lie down with the word "additionally." It is sufficiently clear from the language used by the ALJ that she intended for her analysis regarding the IBS-related symptoms from earlier in the decision, namely in the contradictions between the symptom testimony and related medical evidence, to apply to her discussion regarding Plaintiff's symptom testimony on the need to lie down. *See Brown-Hunter*, 806 F.3d at 492 (holding error is harmless where "the agency's path may reasonably be discerned,

even if the agency explains its decision with less than ideal clarity") (citation and quotation omitted); *see also Olivas v. Comm'r of Soc. Sec. Admin.*, No. CV 22-00278-TUC-BGM, 2023 WL 3749568, at *7 (D. Ariz. June 1, 2023) ("The Court agrees that it would be easier to follow the ALJ's reasoning if all the factors related to his analysis of Olivas's subjective symptom testimony appeared in the same place. Nevertheless, reading the opinion as a whole, the ALJ's reasoning can be discerned.").

The ALJ erred in finding that Plaintiff had failed to mention her need to lie down to her medical providers in the period under review. However, the error is harmless as the ALJ provided valid reasons to discount Plaintiff's credibility as to her symptom testimony, namely in the contradictions regarding the presence and severity of her limiting symptoms to which she testified and her reports to and records of her medical providers. *See Davary v. Kijakazi*, No. 20-16750, 2023 WL 2134401, at *1 (9th Cir. Feb. 21, 2023) ("The ALJ provided specific, clear, and convincing reasons to discount Davary's symptom testimony by citing to record evidence that contradicted Davary's assertions and undermined the severity of the limitations alleged. … Any error in the ALJ's additional reasons for discounting Davary's testimony was harmless.") (internal citations omitted); *Petty v. Colvin*, No. CV-12-02289-PHX-BSB, 2014 WL 1116992, at *14 (D. Ariz. Mar. 17, 2014) (finding that the ALJ "erred in rejecting Plaintiff's subjective complaints regarding urinary incontinence based on his characterization of her treatment modalities as 'limited'" but "he properly rejected Plaintiff's complaints of disabling symptoms, including urinary incontinence" for another reason, namely "based on the limited treatment Plaintiff received from July 2009 through April 2010").

Insofar as Plaintiff puts forth another rational interpretation of the record, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

\*    \*    \*    \*    \*

In sum, the ALJ's error was harmless and the ALJ properly discounted Plaintiff's symptom testimony with clear and convincing evidence.

///

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (Doc. 18) is DENIED;

2.    The ALJ's decision is affirmed; and

3.    The Clerk of the Court shall enter judgment in favor of Defendant, terminate any deadlines, and close this case.

IT IS SO ORDERED.

Dated:    **January 13, 2026**

UNITED STATES MAGISTRATE JUDGE

24